WILLIAM W. OXLEY (SBN 136793)
Woxley@orrick.com
MEGHAN ROHLING KELLY (SBN 292236)
Meghan.kelly@orrick.com
AMARI L. HAMMONDS (SBN 329087)
Amari.hammonds@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
355 S. Grand Ave., Suite 2700
Los Angeles, CA  90071
Telephone:  213-629-2020
Facsimile:   213-612-2499

Attorneys for Defendant
THE GOLDMAN SACHS GROUP, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CHRISTIE SMITH, SHAWNA SANTOS, GEOFF HEWITT, COURTNEY HEWITT, ANGEL AGUILAR, EMILY AGUILAR, JUAN AGUILAR, COREY ALDRIDGE, REEF CHARLOTTE ALLEN, SABRINA DOLORES ALVA, CAROL ARCHEY, CONSTANCE AVILES,** a minor by and through her Guardian Ad Litem, Marcelino Paul Aviles, **DANIEL AVILES,** a minor by and through his Guardian Ad Litem, Vincent Aviles, **MARCELINO M. AVILES,** a minor by and through his Guardian Ad Litem, Marcelino Paul Aviles, **DIEGO AVILES, DONNA AVILES, EZRA AVILES, KAYTLYNN AVILES, MARCELINO PAUL AVILES, TAMMY AVILES, VINCENT AVILES, ALIYYAH BACA,** a minor by and through her Guardian Ad Litem, Juanita Lara, **THEODORE BADMI, DARON S. BANKS, JOANNE A. BARRIES, ANNICA BEARDSHEAR,** a minor by and through her Guardian Ad Litem, Mandy Hart-Beardshear, **DONALD WAYNE BEARDSHEAR, LUNA BENAVIDEZ,** a minor by and through her Guardian Ad Litem, Kaytlynn | Case No.  5:23-CV-02120<br><br>**DEFENDANT THE GOLDMAN SACHS GROUP, INC.'S NOTICE OF REMOVAL** |

Aviles, **SEBASTIAN BENAVIDEZ,** a minor by and through his Guardian Ad Litem, Kaytlynn Aviles, **BRANDY BOHATY, CHERISH BOHATY,** a minor by and through her Guardian Ad Litem, Brandy Bohaty, **ETHAN BOHATY, JACOB BORDIER, CLAUDE BRACKEEN, ERIC BRAND, NATHAN BRAND, PATRICIA BRAND, DON BROWN, PATRICIA BROWN, ELIZABETH ANN BURNS, BERETTA BURNS,** a minor by and through her Guardian Ad Litem, Stephanie Burns, **GLADYS BURNS,** a minor by and through her Guardian Ad Litem, Stephanie Burns, **HELENA BURNS,** a minor by and through her Guardian Ad Litem, Stephanie Burns, **KEETH BURNS, STEPHANIE N. BURNS, MARGARITA LUCINA CASTANEDA, LEAH CAZAREZ, GENE CHAVIRA, KAREN CHAVIRA, MARK CHAVIRA, RICHARD CHAVIRA SR., SAMANTHA COFFEE, JAMIE COPELAND, KENNETH CORDOVA,** a minor by and through his Guardian Ad Litem, Emily Aguilar, **LUCILLE CORDOVA,** a minor by and through her Guardian Ad Litem, Emily Aguilar, **MARCELINE CORDOVA,** a minor by and through his Guardian Ad Litem, Emily Aguilar, **ANTHONY CORDOVA, ROBERT DALE, KAREN DANIELS, ROBERT DEE, ROBERT DERICK, DESIRE DEWEY, TAMARA DINGMAN, MERCEDES DOMINGUEZ, MARIANA DONALDSON, ARIA DOWNING,** a minor by and through her Guardian Ad Litem, Lorraine Mesa, **CINDY S. DOWNING, DAVID DOWNING, MICHAEL DOYLE, KATHLEEN EATON, CORRA LEE EICHENBERGER, TERESA EICHENBERGER, NATHAN ENRIQUEZ,** a minor by and through his

| | |
|---|---|
| 1 | Guardian Ad Litem, Juanita Lara, **DESTINII FARAGO, MICHAEL FLETCHER, ANGEL V. FLORES, GARY FLORES, JANELL FLORES, JOSE V. FLORES, PATRICIA FLORES, PATRICK ADAM FLORES, PAUL FLORES, SHIRLEY FLORES, TRISHA FLORES, ZACHARIAH FLORES,** a minor by and through his Guardian Ad Litem, Stephanie Guerrero, **CRYSTAL FLORES-KANE, ASHLEY FLORES-RADTKE, FAITH FONNER,** a minor by and through her Guardian Ad Litem, Barbara Pitts, **SAMANTHA FORVITO, IAN FRAZIER, NICOLE ALLISON FREDERICK, SHANE FREDERICK, DAVID R. FRITZ, LISA FRITZ, CHARLES GALLEGOS, RUTH GALLEGOS, AALIYAH GAMBLE, ROSEMARY GAMBLE, GUADALUPE GARCIA MENDOZA, CHRISTOPHER GARDNER, CHRISTIANO MICHAEL GUARDADO,** a minor by and through his Guardian Ad Litem, Christopher Juan Guardado, **CHRISTINE ROSA GUARDADO,** a minor by and through her Guardian Ad Litem, Christopher Juan Guardado, **CHRISTOPHER JOSEPH GUARDADO,** a minor by and through his Guardian Ad Litem, Christopher Juan Guardado, **CHRISTOPHER JUAN GUARDADO, ADRIAN GUERRERO,** a minor by and through his Guardian Ad Litem, Stephanie J. Guerrero, **STEPHANIE J. GUERRERO, JOSEPH GUERRERO,** a minor by and through his Guardian Ad Litem, Velsy Ortiz, **VICTORIA P HARPER, BELINDA HARRIS, DENNIS HEMINGWAY, KATHLEEN HIMINGWAY, LINDA HENSLEY, PAUL HENSLEY, DANIEL HERNANDEZ, MARILYN Y. HERNANDEZ, DANIEL HERNANDEZ JR.,** a minor by and through his Guardian Ad Litem, Marilyn |

| | |
|---|---|
| 1 | Hernandez, **MATEO HERNANDEZ,** a minor by and through his Guardian Ad Litem, Marilyn Hernandez, **SOFIA HERNANDEZ,** a minor by and through her Guardian Ad Litem, Marilyn Hernandez, **ANAYA HERRERA,** a minor by and through her Guardian Ad Litem, Juanita Lara, **JANICE HERRICK, ELIJAH HOBBS,** a minor by and through his Guardian Ad Litem, Evette Velasquez, **ISAIAH HOWARD, TABITHA HOWARD, MICHAEL HUGHES, BRANDI IDEN, EDWARD IDEN, SUSAN JAROZEWSKI, VANESSA JARVIS, KELLY JEFFERY, AXEL JIMENEZ, BRISEIDA JIMINEZ,** a minor by and through her Guardian Ad Litem, Lidia Jimenez, **LEONEL JIMENEZ,** a minor by and through his Guardian Ad Litem, Lidia Jimenez, **LIDIA JIMENEZ, XICOTENCALT JIMENEZ, MADISYN KANE,** a minor by and through her Guardian Ad Litem, Crystal Flores-Kane, **ALLEN S. KANE JR., VICTOR P. KEATON, KGOSI KESIILWE, DAVID KORNER, JESSE KORNER, ROBERT KURTH, JESSIE LARA,** a minor by and through her Guardian Ad Litem, Juanita Lara, **MACARIO LARA,** a minor by and through his Guardian Ad Litem, Juanita Lara, **VICTORIA LARA,** a minor by and through her Guardian Ad Litem, Juanita Lara, **JUANITA LARA, BRENT LAUTZENHEISER, MARK LIZARRAGA, ANTHONY LOPEZ, LOUANNA LOPEZ, LOUISA LOPEZ, SALETA LUNA-BORDIER, JOSE MAGANA, MARIA U. MARQUEZ, PAUL C. MARQUEZ, DAVID MARTINEZ, SYLVIA MARTINEZ, DOMINIC MCLING,** a minor by and through his Guardian Ad Litem, Candace Urban-Mcling, **DYLAN MERCHANT,** a minor by and through his Guardian Ad Litem, Brandy Bohaty, **LORRAINE MESA, ANGELINA** |

| | |
|---|---|
| 1 | **MESA,** a minor by and through her Guardian Ad Litem, Lorraine Mesa, **RENA MONTANO, ROBERT MONTANO, LORA MONTOYA, RAYMOND MONTOYA, CYNTHIA G. MORROW, KEVIN MORROW, CHERILYN MYERS, MEGAN MYERS, TAMMY NASON, JACKIE NELSON, BENJAMIN NEWTON, DAVID NICHOLS, RAMONA ORTEZ, VELSY ORTIZ, AIRES PEREZ,** a minor by and through his Guardian Ad Litem, Claudia Perez, **CLAUDIA PEREZ, PAUL PEREZ,** a minor by and through his Guardian Ad Litem, Claudia Perez, **RIO PEREZ,** a minor by and through his Guardian Ad Litem, Claudia Perez, **LYNNZEY PETERSON,** a minor by and through her Guardian Ad Litem, Susan Jarozewski, **NATHAN PETERSON, BARBARA A. PITTS, LOREN PITTS, TABITHA PITTS, DANIEL POWELL, RHONDA POWELL, RICHARD QUERFURTH, SANDRA QUINTON, LUCA RADTKE,** a minor by and through his Guardian Ad Litem, Ashley Flores-Radtke, **DAVID RADTKE, DELANIE RADTKE, COREY RAMIREZ, BARBARA RAY, ROBERT RENO, ABDON G RODRIGUEZ, MAGDALENA RODRIGUEZ, ABDON E. RODRIGUEZ,** a minor by and through his Guardian Ad Litem, Magdalena Rodriguez, **MARIAH G. RODRIGUEZ,** a minor by and through her Guardian Ad Litem, Magdalena Rodriguez, **MARISOL L. RODRIGUEZ,** a minor by and through her Guardian Ad Litem, Magdalena Rodriguez, **SANTIAGO I. RODRIGUEZ,** a minor by and through his Guardian Ad Litem, Magdalena Rodriguez, **PAUL RYKEN, SHANA SALINAS, JALYNN A. SANTOS, JEREMY SANTOS, JOHN ANTHONY SANTOS, WILLIAM** |

| | |
|---|---|
| 1 | **ANTHONY SARAIVA, JOHN SAUM, MELANIE SAUM, ALEXIS SERAFIN, RAYMOND SERAFIN, RYDER SERAFIN,** a minor by and through his Guardian Ad Litem, Raymond Serafin, **JAMIE SHANNON, THOMAS SHANNON, RICCKO ERMINIO MARSIANO SILVA JR.,** a minor by and through his Guardian Ad Litem, David Vincent Velasquez, **MIKAYLA SIMPKINS, BRITTANY SIMPSON, GERI SIMPSON, RICHARD SIMPSON, CURTIS SMITH, STEPHANIE SMITH, JOSHUA SONG, ROGER STAGE, CHRISTIAN STAPLEY,** a minor by and through his Guardian Ad Litem, Karen Stapley, **KAREN STAPLEY, CHRIS STEWARD, TERESA STEWARD, MARDELL STOVALL, TERRENCE STOVALL, WILLIAM STOVALL, SAVANNA TAFOYA, ALEXANDRIA THOMAS, EZEKIEL TRIPP, JERRY TRIPP, JACKIE TRUJILLO, EVELYN TURNER, ANTHONY VALLEJOS, GLORIA VALLEJOS, MARAIAH T. VALVERDE,** a minor by and through her Guardian Ad Litem, Stephanie Guerrero, **LEAH VELASQUEZ, MIA ROSE VELASQUEZ,** a minor by and through her Guardian Ad Litem, David Vincent Velasquez, **NEHEMIAH VELASQUEZ,** a minor by and through his Guardian Ad Litem, Evette Velasquez, **RAELYNN FAITH VELASQUEZ,** a minor by and through her Guardian Ad Litem, David Vincent Velasquez, **BERNADETTE VELASQUEZ, MICIAH VELASQUEZ-HOBBS,** a minor by and through his Guardian Ad Litem, Evette Velasquez, **CINDY VELASQUEZ, DAVID VINCENT VELASQUEZ, EVETTE VELASQUEZ, GREDAN VELASQUEZ, JENNY VELASQUEZ, LYDIA DEANNA VELASQUEZ, DAVID VICKERS, BRANDY** |

| | |
|---|---|
| 1 | **VICTORY, REANNA MARIA WALKER-BANKS, AIDEN WALKER-BANKS,** a minor by and through his Guardian Ad Litem, Reanna Walker-Banks, **ANGELA WEDDLE, ONYX WIGHT,** a minor by and through his Guardian Ad Litem, Brandy Bohaty, **ANDREA WILLIAMS, DANIEL WILLIAMS, JOHN WILLIAMS, TERRY WILLIAMS, CLIFFORD WOOLRIDGE,** and **MARC YSLAS,** |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | Plaintiffs, |
| 9 | vs. |
| 10 | **NURSERY PRODUCTS, LLP**, a corporation; **SYNAGRO TECHNOLOGIES, INC.**, a corporation; **SYNAGRO WWT, INC.**, a corporation; **THE GOLDMAN SACHS GROUP, INC.**, a corporation; and **DOES 1-100**, inclusive, |
| 11 | |
| 12 | |
| 13 | |
| 14 | Defendants. |

PLEASE TAKE NOTICE that Defendant The Goldman Sachs Group, Inc. ("GS Group") files this Notice of Removal pursuant to 28 U.S.C. §§ 1332(a), 1441(a), and 1446(b) to effect the removal of the above-captioned action, which was commenced in the Superior Court of California, San Bernardino County. Every named defendant has consented to GS Group's filing of this Notice of Removal, which is proper for the reasons stated below.[1]

## BACKGROUND

1. On October 4, 2022, Christie Smith et al. ("Plaintiffs") filed a complaint in the Superior Court of California, San Bernardino County. A first amended complaint ("FAC") was filed on February 28, 2023. Ex. A. The FAC's allegations involve substantially similar events as those alleged in *Blevins v. Synagro*, C.D. Cal. No. 5:22-cv-01866 and *Roberta Chavira-Walker and Gregory Chavira-Walker v. Nursery Products, LLP et al.*, C.D. Cal. No. 5:23-cv-00512, which GS Group removed from San Bernardino Superior Court on October 24, 2022, and March 24, 2023, and are currently pending before this Court.

2. The FAC asserts the following causes of action: (1) Negligence, (2) Strict Liability for Ultrahazardous Activities, (3) Continuing Private Nuisance, (4) Permanent Private Nuisance, (5) Continuing Public Nuisance, (6) Permanent Public Nuisance, (7) Violation of Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*), and (8) Trespass. FAC ¶¶ 85-189.

3. Plaintiffs allege that defendants GS Group, Synagro Technologies, Inc. ("Synagro Technologies"), Synagro-WWT, Inc. ("Synagro-WWT"), "Nursery Products, LLP"—a misnomer of Nursery Products, LLC ("Nursery Products")[2]—

---

[1] By filing this notice of removal, GS Group does not waive, and specifically preserves, all arguments and defenses to the FAC, including those arising from personal jurisdiction.

[2] The FAC alleges that "Nursery Products, LLP … owns and operates the Nursery Products Hawes Composting Facility located at 14479 Cougar Road, Helendale, California 92342 in San Bernardino County." FAC ¶ 9. Public records indicate that

and Does 1 through 100 (collectively, "Defendants") engaged in a "negligent disregard for safety" related to the Nursery Products Hawes Composting Facility ("the Facility"). FAC ¶ 1.

4.  Plaintiffs allege that Nursery Products, Synagro-WWT, and Synagro Technologies operated a joint venture with respect to their ownership and control of the Facility and refer to these Defendants as "Facility Defendants." FAC ¶ 17. They allege that "each of the Defendants was the agent, servant, employee, and/or partner of each of the remaining Defendants." *Id.* ¶ 15. Plaintiffs bring the second through sixth and eighth causes of action against the Facility Defendants and bring the first and seventh causes of action against all Defendants. *Id.* ¶¶ 85-189.

5.  Plaintiffs allege that Facility Defendants have failed to comply with state and county regulations by, inter alia, processing excessive and unpermitted forms of waste, allowing waste and litter to accumulate at the facility, failing to comply with appropriate fire safety standards, and engaging in unpermitted off-site dumping. *See, e.g.*, FAC ¶¶ 33, 37, 44-46, 49-51, 65-67. Plaintiffs contend that Facility Defendants engaged in the aforementioned conduct despite knowing that "the risk of fire was likely." *Id.* ¶ 47.

6.  Plaintiffs allege that as a result of this conduct, on May 28, 2022, spontaneous combustion in a compost pile at the Facility caused a fire. FAC ¶¶ 56-63. They further allege that wind carried smoke, strong odors, and particulate matter from the fire to neighboring communities and that the fire injured local residents in various ways. *Id.* ¶¶ 64, 68-78.

7.  GS Group's counsel accepted service of the FAC and summons on GS Group's behalf on September 26, 2023. A copy of the original complaint, FAC,

---

Nursery Products, LLC operates that facility and has a matching business address. Decl. of Amari L. Hammonds ("Hammonds Decl."), Exs. 1, 2. Furthermore, Plaintiffs contacted counsel for Nursery Products, LLC regarding service of the FAC. Hammonds Decl. ¶ 3.

1 Summons, Civil Case Cover Sheet, and all other state court papers served are
2 attached hereto as Exhibit A to this notice. Therefore, this Notice of Removal is
3 timely under the 30-day removal period. 28 U.S.C. § 1446(b); Fed. R. Civ. P.
4 6(a)(1)(C).

## THERE IS DIVERSITY OF CITIZENSHIP

6  8. GS Group removes this action based on 28 U.S.C. §§ 1332(a),
7 1441(a), and 1446(b). Section 1332 gives this Court original jurisdiction over civil
8 actions between citizens of different States where the matter in controversy exceeds
9 the sum or value of $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a).

10  9. The diversity requirement is satisfied where no party properly joined
11 and served as a defendant is a citizen of the same State as any plaintiff. 28 U.S.C.
12 §§ 1332(a)(1), 1441(b)(2). Here, Plaintiffs are citizens of the forum State
13 (California), and no defendant is a citizen of that State.

14  10. **Plaintiffs' Citizenship:** For diversity purposes, a person is a "citizen"
15 of the state in which he or she is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704
16 F.2d 1088, 1090 (9th Cir. 1983). A person's domicile is the place where he or she
17 resides with the intention to remain or to which he or she intends to return.
18 *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). Plaintiffs allege
19 that they reside and are domiciled in the State of California. FAC ¶¶ 1, 8, 25. GS
20 Group therefore also alleges that Plaintiffs are domiciled in and are citizens of the
21 State of California.

22  11. **Defendants' Citizenship:** A corporation is deemed a citizen in every
23 State in which it is incorporated and the State in which it has its primary place of
24 business. 28 U.S.C. § 1332(c)(1); *Johnson v. Columbia Props. Anchorage, LP*, 437
25 F.3d 894, 899 (9th Cir. 2006). In contrast, a limited liability company "is a citizen
26 of every state of which its owners/members are citizens." *Id.* The Supreme Court
27 has "consistent[ly] refus[ed] to extend the corporate citizenship rule to non-
28

corporate entities, including those," like limited liability companies, "that share some of the characteristics of corporations." *Id.*

12. GS Group is alleged in the FAC to be a Delaware corporation with its principal place of business in New York, New York. FAC ¶ 12. GS Group also alleges these facts. Accordingly, GS Group is deemed a citizen of Delaware and New York for the purposes of establishing diversity jurisdiction.

13. Synagro Technologies is a Delaware corporation with its principal place of business in Baltimore, Maryland. Grant Decl. ¶ 2; *see also* FAC ¶ 11 (alleging same facts). Accordingly, Synagro Technologies is deemed a citizen of Delaware and Maryland for the purposes of establishing diversity jurisdiction.

14. Synagro-WWT is a Maryland corporation with its principal place of business in Baltimore, Maryland. Grant Decl. ¶ 3; Hammonds Decl., Ex. 1. Accordingly, Synagro-WWT is deemed a citizen of Maryland for the purposes of establishing diversity jurisdiction.[3]

15. Nursery Products is alleged in the FAC to be "a California corporation with its principal place of business in California." FAC ¶ 9. However, Nursery Products is a limited liability corporation, not a corporation. As such, its citizenship is determined by the citizenship of its members. *Johnson*, 437 F.3d at 899; *see also id.* at 896-97.[4] The FAC fails to identify Nursery Products' members or allege their respective citizenships. *De Leon v. Aurora Loan Servs.*, No. cv-09-8389, 2009 WL 5065254, at *1 (C.D. Cal. Dec. 15, 2009) ("To establish the citizenship of a limited liability company, Defendant must, at a minimum, allege the citizenship of all members of the limited liability company."). GS Group alleges that the sole member-owner of Nursery Products is Synagro-WWT, which is a Maryland corporation. Grant Decl. ¶ 4; Hammonds Decl., Ex. 1. Therefore, Nursery Products

---

[3] The FAC alleges that Synagro-WWT's principal place of business is in Houston, Texas. FAC ¶ 10. This would still establish complete diversity from Plaintiffs.

[4] The same rule would apply even if Nursery Products were a limited liability partnership as misnamed in the FAC. *Johnson*, 437 F.3d at 899; *see* FAC ¶ 9.

is deemed a citizen of Maryland for the purposes of establishing diversity jurisdiction.

16. **Doe Defendants' Citizenship:** The citizenship of fictitiously named defendants is disregarded when establishing diversity jurisdiction under 28 U.S.C. § 1332. *See* 28 U.S.C. § 1441(b)(1); *see also Bryant v. Ford Motor Co.*, 886 F.2d 1526, 1528 (9th Cir. 1989) (discussing same rule as previously codified in § 1441(a)).

## THE AMOUNT IN CONTROVERSY EXCEEDS $75,000

17. The notice of removal may assert the amount in controversy where the complaint seeks nonmonetary relief, or where a money judgment is sought but the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded. 28 U.S.C. § 1446(c)(2)(A). Removal is proper on the basis of the asserted amount if the Court finds by a preponderance of the evidence that the amount in controversy for an individual plaintiff would exceed $75,000. 28 U.S.C. § 1446(c)(2)(B); *Urbino v. Orkin Servs. of Cal., Inc.*, 726 F.3d 1118, 1122 (9th Cir. 2013); *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005). This inquiry is directed at "the amount of damages *in dispute*" at the time of removal based on the plaintiff's claims, *Kroske*, 432 F.3d at 980 (emphasis added), "whatever the likelihood that she will actually recover them." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018) ("[T]here is no question that [those damages] are 'at stake' in the litigation.").[5] The amount in controversy is calculated per plaintiff and "may include 'damages (compensatory, punitive, or otherwise) and the cost of complying with an injunction, as well as attorneys' fees[.]" *Id.* at 416; *see also Urbino*, 726 F.3d at

---

[5] In addressing the amount in controversy, GS Group disputes Plaintiffs' allegations and is not admitting liability or that Plaintiffs are entitled to any damages from GS Group. GS Group reserves the right to deny Plaintiffs' allegations in their entirety and challenge the actual damages in subsequent proceedings and at trial. *See Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 n.1 (9th Cir. 2015).

1122; *Baumann v. Chase Inv. Servs. Corp.*, 747 F.3d 1117, 1121 (9th Cir. 2014) (permitting aggregation between plaintiffs only under Class Action Fairness Act). When the amount in controversy is not "facially apparent" from the complaint, "the court may consider facts in the removal petition" to determine the potential damages at issue. *Kroske*, 432 F.3d at 980 (quoting *Singer v. State Farm Mut. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)).

      18.    In this proposed civil action, Plaintiffs' prayer for relief includes nonmonetary relief. FAC at 37 (seeking a "permanent injunction" against Defendants requiring them to, among other things, "abate the nuisance" and "repair and restore areas impacted by the release of toxic materials"). Furthermore, under California law, a plaintiff may recover damages in excess of the amount demanded. *Greenup v. Rodman*, 42 Cal.3d 822, 827 (1986) ("[T]he court is not bound by the demand of the complaint, but may award any relief consistent with the case made by the plaintiff."); Cal. Code of Civ. Proc. § 580(a). GS Group may therefore assert the amount in controversy in its notice of removal.

      Although the FAC fails to demand a specific sum, the amount in controversy exceeds $75,000 per plaintiff. In an email to GS Group's counsel dated October 9, 2023, Plaintiffs' counsel represented that "they anticipate seeking more than $75,000 in damages per plaintiff in this case, inclusive of attorneys' fees and injunctive relief." Hammonds Decl. ¶ 3. As a result, Plaintiffs "do not contest the existence of diversity jurisdiction." *Id.* Under Ninth Circuit law, this admission alone is sufficient to establish the amount in controversy exceeds $75,000 as required for diversity jurisdiction. "Such a concession is tantamount to a plaintiff expressly alleging damages in excess of the jurisdictional amount, which [the Court may] accept as the amount in controversy if done in good faith." *Chavez*, 888 F.3d at 416. "Where the plaintiff filed the case in state court, and did not seek the federal forum, then the plaintiff's formal judicial admission that the amount in controversy exceeds [the jurisdictional minimum] has the effect of defeating the plaintiff's

choice of forum." *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997) (affirming denial of remand motion because district court reasonably relied on similar admission in concluding jurisdictional requirement was satisfied). As in *Singer*, Plaintiffs have filed personal injury claims, for which California law prohibits plaintiffs from stating the amount in controversy in a complaint. Cal. Code Civ. Proc. § 425.10(b); *see, e.g.*, FAC ¶ 2. Especially "[i]n this context, where state law prohibited plaintiff from stating the amount in controversy in the complaint, the district judge has discretion to accept the admission as establishing it." *Singer*, 116 F.3d at 376.

19. As explained below, "the plausibility of the admission" based on the FAC's allegations and other evidence further supports jurisdiction. *Singer*, 116 F.3d at 377. GS Group provides the following additional analysis of potential damages (without admitting liability or that any Plaintiff is entitled to the relief sought) based on the allegations in Plaintiffs' FAC and judicially noticeable facts to further demonstrate that the FAC puts in controversy a sufficient amount for removal under 28 U.S.C. § 1332(a). "[T]he defendant's showing on the amount in controversy may rely on reasonable assumptions" about its damages exposure. *Acad. of Country Music v. Cont'l Cas. Co.*, 991 F.3d 1059, 1069 (9th Cir. 2021) (quoting *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019)); *see also Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010) (permitting "reasonable deductions, reasonable inferences, or other reasonable extrapolations"); *Behrazfar v. Unisys Corp.*, 687 F. Supp. 2d 999, 1004 (C.D. Cal. 2009) (relying on defendants' good faith, conservative estimates). "[A] removing defendant is not obligated to 'research, state, and prove the plaintiff's claims for damages,'" *Narayan v. Compass Grp. USA, Inc.*, 284 F. Supp. 3d 1076, 1089-90 (E.D. Cal. 2018); *see also Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 88-89 (2014).

20.     Even setting aside Plaintiffs' counsel's concessions, judicially noticeable facts, including the damages in dispute in "similar … cases"—reliance on which the Ninth Circuit has upheld in assessing jurisdiction, *Kroske*, 432 F.3d at 980 (citing *De Aguilar v. Boeing Co.*, 11 F.3d 55, 58 (5th Cir. 1993))—demonstrate that the various categories of damages and injunctive relief sought by Plaintiffs push the amount in controversy well above $75,000 per plaintiff.

21.     **Plaintiffs' request for punitive damages alone places the amount in controversy beyond $75,000 per plaintiff:** "It is well established that punitive damages are part of the amount in controversy in a civil action." *Gibson*, 261 F.3d at 945. "Punitive damages are intended to punish a defendant's past misconduct and deter future wrongful acts." *E.E.O.C. v. Farmer Bros. Co.*, 31 F.3d 891, 904 (9th Cir. 1994) (citing *Neal v. Farmers Ins. Exch.*, 21 Cal. 3d 910, 929 n.13 (1978)). "Under California law," "the financial condition of the defendant" is one of several criteria a court or jury may consider in calculating punitive damages. *Id.* (including this criterion alongside "the severity of the defendant's misconduct" and "the injury caused").

22.     Plaintiffs' punitive damages requests will by themselves exceed $75,000 per plaintiff. GS Group is a leading global financial services firm that reported net earnings in 2022 close to $11 billion. Hammonds Decl., Ex. 3 at 21 (GS Group's 2022 Form 10-K). The Complaint requests "punitive and exemplary damages … to punish or set an example of Defendants and deter such behavior by Defendants and others in the future." FAC ¶ 101. Plaintiffs allege Defendants' wrongful acts and/or omissions "were done maliciously, oppressively, fraudulently, and/or in conscious disregard of the health and safety of Plaintiffs and their community," *id.* ¶ 97, and have resulted in "thousands of individuals" being "exposed to elevated levels of burnt biosolids and other contaminants," *id.* ¶ 2. The Complaint further alleges that the Facility has repeatedly violated relevant safety

regulations and experienced "five other compost fires" in recent years before the one at issue in this case. *Id.* ¶ 54.

23.     Given GS Group's financial condition (even without considering the financial condition of other Defendants), the conduct alleged, and the community-wide harm allegedly caused, there is no doubt that Plaintiffs' punitive damages request places the amount in controversy well over $75,000. Juries have awarded far more in similar cases involving pollution from industrial activity. *Compare, e.g.*, *Orjias v. Stevenson*, 31 F.3d 995, 1011, 1014 (10th Cir. 1994) (punitive damages around 0.2 percent of defendant's net worth, with each of 12 plaintiffs receiving $156,000 based on actual damages as low as $10,000); *McKiver v. Murphy-Brown, LLC*, 980 F.3d 937, 946 (4th Cir. 2020) ($5 million in punitive damages, capped to $2.5 million under state law, awarded to 23 plaintiffs who each received $75,000 in compensatory damages); *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 978 (1993) ($2.6 million in total punitive damages awarded to four landowners). Within the Central District, even torts by individual defendants can result in punitive damages exceeding $75,000. *See Crawford v. Cnty. of Orange*, No. 16-cv-01503, 2018 WL 3121883 (C.D. Cal. Apr. 25, 2018) ($250,000 in punitive damages awarded to individual counterclaimant based on "[c]ourthouse brawl"). Accordingly, the punitive damages at stake here alone satisfy the jurisdictional minimum.

24.     **Plaintiffs' request for attorneys' fees alone places the amount in controversy above $75,000 per plaintiff:** "[T]he amount in controversy includes … attorney[s'] fees if authorized by statute or contract." *Kroske*, 432 F.3d at 980. The FAC asserts a request for attorneys' fees (FAC at 38), and Plaintiffs will seek fees exceeding $75,000 per plaintiff. Plaintiffs' attorneys, Cotchett, Pitre & McCarthy, LLP, have regularly requested attorneys' fees in the millions of dollars, including in cases that led to settlement. *See* Hammonds Decl., Ex. 4 at 26 (Cotchett asserting $2,393,007.50 lodestar for 4,249.8 hours of legal work);

Hammonds Decl., Ex. 5 at 55 ($9,437,778.00 lodestar for 17,412.62 hours of legal work); Hammonds Decl., Ex. 6 at 103 (requesting $1,494,135 fee based on $4,998,897 lodestar for 11,751 hours of legal work). Analyzing Cotchett's lodestar against total hours worked, Cotchett frequently requests fees using a lodestar with $500 hourly rates. Assuming a similar calculation here, Cotchett's lodestar in the present action would touch $75,000 after only 150 hours of legal work, something that may have already happened. In any event, for a case of the nature described in the Complaint, Cotchett would work more than 150 hours per plaintiff on this case even if the case ends in settlement. *See, e.g.*, Dkt. 1, Ex. A at 67 (civil case cover sheet designating the action as provisionally complex civil litigation with "[l]arge number of separately represented parties," "[e]xtensive motion practice," a "[s]ubstantial amount of documentary evidence," and a "[l]arge number of witnesses"). Accordingly, Plaintiffs' request for attorneys' fees alone places the amount in controversy above $75,000. *See also Stanton Rd. Assocs. v. Lohrey Enters.*, No. C890947, 1991 WL 632301 (N.D. Cal. Apr. 15, 1991) (one plaintiff awarded $389,925 in consequential damages and $126,198 in attorney's fees after the defendant's commercial dry-cleaning business contaminated neighboring property owned by plaintiff).

25. **Plaintiffs' other requested relief also places the amount in controversy well above $75,000:** Plaintiffs' other requested relief also demonstrates the amount in controversy will exceed $75,000. GS Group notes just a few examples below.

26. *Damages for personal injuries*. Plaintiffs allege they have suffered numerous damages "including but not limited to … headaches, vomiting, nausea, asthma and other respiratory problems," FAC ¶ 90, as well as "discomfort, annoyance, anxiety, fear, worries, and stress attendant to the interference with Plaintiffs' occupancy, possession, use, and/or enjoyment of their property," *id.* ¶ 123. In a case involving similarly noxious odors, *without* the kinds of allegations

of physical illness here, each plaintiff received $75,000 in compensatory damages on their nuisance claims. *McKiver*, 980 F.3d at 946, 955 (industrial hog harm). In *Orjias*, where the plaintiffs experienced "physical illness, annoyance, inconvenience, and discomfort" and ultimately vacated their homes, 31 F.3d at 999—a reasonable outcome here considering Plaintiffs' allegations that they have needed to "relocate," FAC ¶ 149—actual damages ranged between $10,000 and $98,320 per plaintiff, *Orjias*, 31 F.3d at 999. And in yet another case, where four landowners were "subjected to prolonged exposure to certain carcinogens" but did not presently suffer any cancerous or precancerous condition, the plaintiffs were awarded $800,000 for their lifelong fear of cancer and resultant emotional distress, $269,500 for psychiatric illness, and $108,100 "for the general disruption of their lives and the invasion of their privacy." *Potter*, 6 Cal. 4th at 975, 978. *Compare* FAC ¶¶ 81, 90 (alleging the air contaminants from the Facility not only place them at risk for illness and disease, but are presently causing them symptoms). These and other comparator cases demonstrate that the amount in controversy exceeds $75,000 per plaintiff. *See, e.g.*, *Schaeffer v. Gregory Vill. Partners L.P.*, No. 3:13-cv-04358, 2015 WL 10553230 (N.D. Cal. Nov. 23, 2015) (awarding two plaintiffs $706,500 for contaminated air, soil, and water under theories including public nuisance, private nuisance, trespass, negligence, and ultrahazardous activity); *Walnut Creek Manor, LLC v. Mayhew Ctr., LLC*, No. 4:07-cv-05664, 2009 WL 3260096 (N.D. Cal. June 1, 2009) (one plaintiff awarded $1,947,000 under theories of private nuisance, public nuisance, trespass, negligence, negligence per se, and strict liability after jury found that harmful chemicals were released from defendant's property); *Stanton Rd. Assocs.*, 1991 WL 632301 (plaintiff awarded $389,925 in consequential damages).

27.    *Diminution in property value.* Plaintiffs allege they "have suffered and will continue to suffer the diminution of the value of their property." FAC ¶ 96. The Census Bureau places the median value of owner-occupied homes in San

Bernardino County at $370,700. Hammonds Decl., Ex. 7 at 124. Plaintiffs may well seek up to the full value of their home even if not precisely stated in the Complaint. *See Gibson*, 261 F.3d at 946 (explaining that "the potential for [certain] damages may still be considered for purposes of amount in controversy" even if "not explicitly request[ed]" in complaint); *Bradley v. Armstrong Rubber Co.*, 130 F.3d 168, 171 (5th Cir. 1997) (plaintiffs sought to prove market value of homes had turned "negative" based on soil and water contamination).

28.  *Medical monitoring.* Plaintiffs allege entitlement to medical monitoring because they "have been placed at an increased risk of contracting latent illness and disease, including but not limited to respiratory, cardiovascular, neurological, and mental health issues." FAC ¶ 81. The value of the medical monitoring in dispute could reach upwards of tens of thousands of dollars per plaintiff. *See Potter*, 6 Cal. 4th at 978 ($142,975 awarded to four plaintiffs for medical monitoring).

29.  *Injunctive relief.* The amount in controversy also includes "'the cost of complying with an injunction.'" *Chavez*, 888 F.3d at 416. Plaintiffs seek broad injunctive relief, including establishing "a fund for the relocation of Plaintiffs and impacted residents," which allegedly number in the thousands. FAC at 37; *see also id.* ¶ 1. A relocation fund for thousands of residents itself plainly satisfies the amount-in-controversy requirement. Documents available on San Bernardino County's website suggest a corresponding relocation fund could top $700,000: One proposed 2018 relocation plan's schedule for fixed moving expense payments started at $725 for the smallest moves and capped rental assistance post-move at $7,200. Hammonds Decl., Ex. 8 at 138, 139. Given potential fund costs in addition to the other injunctive relief requested, the request for injunctive relief alone places the amount in controversy above $75,000.

## VENUE

30. Venue is proper in the Eastern Division of the Central District of California pursuant to 28 U.S.C. §§ 84(c), 1391, and 1446(a). This action was originally brought in the Superior Court of California, San Bernardino County, located in the Central District's Eastern Division. 28 U.S.C. § 84(c)(1). Furthermore, the FAC alleges that the events giving rise to the action occurred in San Bernardino, California. FAC ¶ 7.

## NOTICE OF REMOVAL

31. This Notice of Removal shall be served promptly on Plaintiffs' Counsel of Record and filed with the Clerk of the Superior Court of California, San Bernardino County.

32. In compliance with 28 U.S.C. § 1446(a), attached hereto as Exhibit A to this notice are copies of all state-court papers served herein, including the original complaint, FAC and Summons.

33. As stated above, all Defendants have consented to GS Group's filing of this Notice of Removal.

Dated: October 16, 2023

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: /s/ *Amari L. Hammonds*
AMARI L. HAMMONDS
Attorney for Defendant
THE GOLDMAN SACHS GROUP, INC.